IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>GEORGE BADGER; LAJUANA BADGER; SB TRUST; DAVID BADGER AS TRUSTEE FOR THE SB TRUST; ARDCO LEASING & INVESTMENT LLC; AMERICAN RESOURCES AND DEVELOPMENT CO. INC.; and SPRINGFIELD FINANCE AND MORTGAGE CO., LLC;<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  2:10-cv-00935<br><br><br><br>**District Judge Robert J. Shelby**<br><br>**Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Robert J. Shelby pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are (1) American Resources and Development Company, Inc. and Springfield Finance and Mortgage Company, LLC's (collectively, "Springfield Defendants") motion for leave to file an amended answer;[2] (2) the United States of America's ("Plaintiff") motion to strike the affidavit of Lajuana Badger ("Ms. Badger");[3] and (3) Plaintiff's motion for issuance of a letter of request for international judicial assistance ("Letter of Request") under the Hague Convention.[4] The court has carefully reviewed the motions and memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the United

---

[1] *See* docket nos. 63 and 107.

[2] *See* docket no. 71

[3] *See* docket no. 86.

[4] *See* docket no. 94.

States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary.  *See* DUCivR 7-1(f).

## BACKGROUND

On December 22, 2004, the United States District Court for the District of Utah entered a consent judgment against George Badger ("Mr. Badger") in the case *SEC v. Badger*, Case No. 2:97-cv-0963 ("SEC Action").[5]  This consent judgment arose from Mr. Badger's fraudulent efforts to boost sales of stock in a golf course development company he operated.  Mr. Badger apparently paid bribes to brokers to induce them to sell the golf course development stock to their clients.

In the consent judgment, Mr. Badger was ordered to pay disgorgement of over $19 million.  According to Plaintiff, Mr. Badger now owes more than $32 million with the accrual of interest and penalties.  Mr. Badger has voluntarily paid $2,228 toward the judgment.  The other amounts collected on the consent judgment, totaling less than $13,000, were involuntarily collected through deductions from his Social Security payments and federal tax refunds, and payments that Mr. Badger made after the court in the SEC Action found him in contempt of the consent judgment.

In the present action, Plaintiff asserts that "[i]nstead of paying the consent judgment, . . . Mr. Badger has used a series of nominees and alter egos to hide his assets and frustrate collection of the consent judgment."[6]  Accordingly, Plaintiff commenced the instant action seeking a declaration that the Springfield Defendants, as well as Ms. Badger, the SB Trust, and ARDCO Leasing & Investment LLC are Mr. Badger's nominees and/or alter egos and, as such, their

---

[5] *See SEC v. Badger*, No. 2:97-cv-0963, docket no. 342 at 4.

[6] Docket no. 73 at 3.

assets are available to satisfy the consent judgment against Mr. Badger. Plaintiff also seeks the issuance of a Letter of Request so that it may obtain discovery from individuals and entities in Switzerland, namely Miltex, Banque SCS, and Camille Froidevaux (collectively, "European Entities"), as Plaintiff contends that Mr. Badger has used them as nominees to funnel money into the United States. The court will address each motion in turn.

## DISCUSSION

### I. Motion for Leave to Amend

In the instant motion, the Springfield Defendants move for leave to amend their answer to assert two additional affirmative defenses: (1) res judicata or claim splitting and (2) failure to join indispensable parties. The motion for leave to amend was filed approximately six months after the deadline for amending pleadings. The Springfield Defendants argue that nearly six months after they filed their original answer on December 20, 2010, they obtained new counsel and that "[b]ecause this case involves facts and transactions spanning nearly two decades, and . . . well over 7,000 documents, it has taken current counsel some time to understand the nature of the Plaintiff's allegations."[7] In response, Plaintiff argues that the Springfield Defendants' motion is untimely and allowing the proposed amendment would be futile.

Rule 15(a) of the Federal Rules of Civil Procedure provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that the mandate of rule 15(a) "is to be heeded" and that "[i]n the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" (quoting previous version of Fed. R. Civ. P. 15)). As noted by the Tenth Circuit, rule 15 is intended "to provide litigants the maximum opportunity for each claim

---

[7] Docket no. 72 at 3.

to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotations and citations omitted).

"Whether to grant or deny leave to amend is within the sound discretion of the trial court. *See Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993). A court may refuse to grant leave to amend only where it finds evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Minter*, 451 F.3d at 1204 (quotations and citations omitted). The "most important . . . factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Id.* at 1207. Generally, courts have determined that permitting the amendment of a pleading is prejudicial only when it unfairly affects the nonmovant in terms of rebutting the amendment's legal claim, factual averment, and/or affirmative defense. *See id.* at 1208.

Some courts require a party seeking to amend a pleading after the deadline for doing so demonstrate "good cause" for the delay pursuant to rule 16(b) of the Federal Rules of Civil Procedure. *Id.* at 1205 n.4. Good cause may be established by the moving party's diligence in attempting to meet the deadline or when there is an adequate explanation for the delay. *See id.* While the Tenth Circuit noted that other Circuits have adopted the "good cause" standard in such circumstances, it expressly declined to apply it in *Minter* because the parties had not argued the relevancy of rule 16(b).[8] *Id.* The court noted, however, that the "good cause" standard of rule 16(b) and the court's "undue delay" analysis under rule 15 were fairly analogous and, as such, application of the rule 16(b) standard would not have affected the outcome in that case. *Id.*

---

[8] Like the parties in *Minter*, neither party in the instant case has addressed the applicability of rule 16(b) in relation to a motion for leave to amend a pleading after the deadline. *See id.*

4

**1. Timeliness**

Plaintiff asserts that the Springfield Defendants and their new counsel were well aware of the facts that form the basis for the Springfield Defendants' proposed affirmative defenses long before the expiration of the deadline to amend pleadings. Specifically, Plaintiff argues that the Springfield Defendants (1) had knowledge of Mr. Badger's prior criminal case, as well as the SEC Action against him; (2) understood from Plaintiff's initial disclosures and discovery responses that Plaintiff's theory of case included Mr. Badger's use of the European Entities as nominees to funnel money into the United States; and (3) the documents that the Springfield Defendants contend their counsel had to review and understand before they could assert these new defenses belong to the Springfield Defendants themselves and illustrate the nature and scope of their dealings with the European Entities.

In response, the Springfield Defendants acknowledge that their motion was not filed until six months after expiration of the deadline. However, they argue that leave to amend should nevertheless be granted because they did not discover the basis for the affirmative defenses until after the deadline for amending pleadings. Specifically, the Springfield Defendants maintain they were not aware that Plaintiff was pursuing the theory that Mr. Badger used the European Entities as alter egos until they received Plaintiff's discovery responses on September 21, 2011, as well as a letter dated October 17, 2011, from Plaintiff's counsel responding to the Springfield Defendants' request that Plaintiff clarify its theory. The Springfield Defendants argue that they received further confirmation of Plaintiff's theory at Mr. Badger's deposition on January 17, 2012, when Plaintiff's counsel referred to portions of Mr. Badger's depositions from the SEC Action in 2000 and 2001 regarding his use of the European Entities as nominees.

The Springfield Defendants also contend that the delay should be excused on the grounds that they changed counsel after the answer was filed, and given the complexity of the case and the two decades of events and legal proceedings, their previous counsel could not have been expected to assert every possible affirmative defense.  Lastly, the Springfield Defendants assert that the delay may be further excused by their counsel's admitted difficulty in understanding Plaintiff's claims and allegations with regard to the European Entities.

The court concludes that the Springfield Defendants' delay in filing the present motion is reasonable and not undue.  The court appreciates Plaintiff's position that the Springfield Defendants had the information to amend their answer prior to the deadline; however, given the change in counsel and the complexity of the case, as well as counsel's request to clarify Plaintiff's new "legal theory/line of evidence"[9] after the expiration of the deadline for amending pleadings, the Springfield Defendants could not have met the deadline with diligent effort.  In short, the court finds that the Springfield Defendants proffered an adequate explanation for the delay, thus demonstrating good cause.  Accordingly, the court concludes that Plaintiff's timeliness argument fails.

### 2. Futility

Plaintiff asserts that both affirmative defenses are futile and, as such, the court should deny the Springfield Defendants' motion for leave to amend.   Specifically, Plaintiff contends that the claims in this matter and the SEC Action are not identical nor are the parties and/or their privies the same.  Plaintiff also argues that the Springfield Defendants cannot demonstrate that the European Entities are indispensable parties because the declaratory relief sought, that the Springfield Defendants, Ms. Badger, the SB Trust, and ARDCO Leasing & Investment LLC are

---

[9] *Id.*

all Mr. Badger's nominees and/or alter egos, can be provided without the inclusion of the European Entities.

A court "is justified in denying a motion to amend as futile . . . if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim." *Beckett ex rel. Cont'l W. Ins. Co. v. U.S.*, 217 F.R.D. 541, 543 (D. Kan. 2003). While courts may determine that a particular affirmative defense is futile, the applicable standard is found in rule 12(f) of the Federal Rules of Civil Procedure rather than in rule 12(b)(6).[10] *See Tiscareno v. Frasier*, No. 2:07-CV-336, 2012 WL 1377886, at *16 (D. Utah April 19, 2012); *Layne Christensen Co. v. Bro-Tech Corp.* No. 09-cv-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan Aug. 29, 2011).

Rule 12(f) permits striking an insufficient defense from a pleading where it "cannot succeed, as a matter of law, under any circumstances." *Tiscareno*, 2012 WL 1377886, at *6 (quotations and citation omitted). However, in striking a defense, "its insufficiency must be clearly apparent and no factual issues exist that should be determined in a hearing on the merits." *Livingston v. Sodexo, Inc. v. Affiliated Co.*, No. 11-4162-EFM, 2012 WL 2045292, at *2 (D. Kan. June 6, 2012) (quotations and citation omitted). Thus, courts "should decline to strike material from a pleading unless that material has no possible relation to the controversy and may prejudice the opposing party." *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008).

---

[10] While some courts have held that the heightened pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), apply to affirmative defenses, no federal appeals court has addressed the issue. *See Tiscareno v. Frasier*, No. 2:07-CV-336, 2012 WL 1377886, at *16 (D. Utah April 19, 2012). Neither party has expressly provided the proper standard for determining whether a proposed affirmative defense would is futile. This court agrees with the reasoning in *Tiscareno* and, as such, applies it here. *See id.* at *13-*16.

In determining whether to strike a defense or proposed defense, courts should consider the purpose of rule 12(f), which is "to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial." *Id.* That said, "[a] court should proceed with extreme caution in striking a pleading." *Hark'n Technologies, Ltd. v. Greater Performance, Inc.*, No. 1:06CV77DAK, 2007 WL 2007579, at *1 (D. Utah July 6, 2007) (quotations and citation omitted). "Motions to strike are not favored and any doubt as to the striking of a matter in a pleading should be resolved in favor of the pleading." *Id.* (quotations and citation omitted). With the foregoing in mind, the court will now examine whether the Springfield Defendants' proposed affirmative defenses are futile under rule 12(f).

### A.  Res Judicata

The doctrine of res judicata or claim preclusion prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit. *See Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1236 (10th Cir. 1992). Three basic elements must be present in order for the doctrine to apply: "(1) the first suit must have proceeded to a final judgment on the merits; (2) the parties must be identical or in privity; and (3) the suits must be based on the same cause of action." *Id.* The Tenth Circuit has adopted the "transactional approach" to determine whether a claim arises "out of the same transaction, or series of connected transactions as a previous suit" and is thus precluded in a second suit. *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (quotations and citation omitted). This determination requires a pragmatic approach, "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quotations and citation omitted).

No issue exists as to the first element because the SEC Action did proceed to a final judgment on the merits. However, as to the second and third elements, the court concludes that there is some question as to whether the parties are identical or privies and whether the claims were or could have been raised in the SEC Action. *See id.* Thus, the court cannot say that the facts encompassed by this suit did not arise out of the same transaction or series of transactions such that the affirmative defense would be futile. Given the standard for striking affirmative defenses under rule 12(f), the court is not convinced that a res judicata or claim preclusion defense asserted in this case could not "succeed, as a matter of law, under any circumstances." *See Tiscareno*, 2012 WL 1377886, at \*16. While the court concludes that the Springfield Defendants may assert res judicata as an affirmative defense, it makes no finding or conclusion as to whether this defense is likely to be successful.

### B. Indispensable Parties

The Springfield Defendants assert that the European Entities are indispensable parties and that they should be permitted to amend their answer to assert this defense. In response, Plaintiff argues that this defense is also futile because the relief sought in this case can be provided without the inclusion of the European Entities.

The issue of indispensable parties is generally resolved by a rule 12(b)(7) motion to dismiss for failure to join an indispensable party under rule 19. *See Sunrise Fin., Inc. v. PaineWebber, Inc.*, 948 F. Supp. 1002, 1006 (D. Utah). In a footnote, the Springfield Defendants state that their proposed affirmative defense of failure to join indispensable parties "is arguably not even an affirmative defense that requires and amended pleading" but was included "to provide . . . Plaintiff with fair notice of . . . [the Springfield] Defendants'

9

position."[11]  Based on the court's cursory research, it appears that failure to join indispensable parties is a recognized affirmative defense.  *See, e.g.*, *Bower v. Stein Eriksen Lodge Owners Ass'n, Inc.*, No. 2:99CV155C, 2000 WL 33710908, at *3 (D. Utah March 1, 2000).  Nevertheless, based on the rule 12(f) standard for striking defenses, it is not "clearly apparent," *Livingston*, 2012 WL 2045292, at *2, that this affirmative defense could not "succeed, as a matter of law, under any circumstances."  *See Tiscareno*, 2012 WL 1377886, at *16.  Again, while the court concludes that the Springfield Defendants may assert failure to join indispensable parties as a defense, it makes no finding or conclusion as to whether this defense is likely to be successful.

Lastly, the court notes that Plaintiff has not demonstrated that it will suffer prejudice if the amendment is allowed.  Because the Springfield Defendants are seeking to add affirmative defenses rather than counterclaims, there is likely little need for additional discovery.  *See Harrison v. Wahatoyas*, L.L.C., 253 F.3d 552, 558 (10th Cir. 2001).  However, even assuming additional discovery is required, as Plaintiff argues, "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice."  *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009).

Based on the foregoing, this court concludes that the Springfield Defendants may amend their answer to include the affirmative defenses of res judicata and failure to join indispensable parties.  As such, the Springfield Defendant's motion for leave to amend is **GRANTED**.

## II.  Motion to Strike Affidavit

Plaintiff moves to strike Ms. Badger's November 30, 2010 affidavit that Mr. Badger, Ms. Badger, SB Trust, David Badger as Trustee for the SB Trust, and ARDCO Leasing & Investment

---

[11] Docket no. 74, at 15 n.9.

LLC (collectively, "Badger Defendants") submitted in support of their motion for partial summary judgment.  The affidavit was originally prepared and submitted to the court in connection with the Badger Defendants' opposition to Plaintiff's motion for a preliminary injunction.

Plaintiff states that because Ms. Badger passed away on May 10, 2012, she is unavailable as a witness.  Plaintiff contends that because it did not have the opportunity to cross-examine Ms. Badger regarding the affidavit testimony in a trial, hearing, or deposition, the affidavit is not in a form that would be admissible in evidence.  *See* Fed. R. Evid. 804(b)(1).  As such, Plaintiff urges the court to strike Ms. Badger's affidavit.

While the court recognizes that Ms. Badger is unavailable as a witness, it concludes that striking the affidavit is unnecessary.  This court is highly confident that Judge Shelby will afford Ms. Badger's affidavit proper weight, appropriate attention, and due consideration in deciding the Badger Defendants' pending motion for partial summary judgment.  Accordingly, Plaintiff's motion to strike Ms. Badger's affidavit is **DENIED**.

### III.  Motion to Issue a Letter of Request

Plaintiff moves this court to issue a Letter of Request to obtain discovery from the European Entities in Switzerland under 28 U.S.C. § 1782.  A Letter of Request is essentially a request by a "domestic court to a foreign court to take evidence from a certain witness." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) (quotations and citation omitted).  "United States courts have inherent authority to issue [L]etters of [R]equest to foreign tribunals." *In re Urethane Antitrust Litigation*, 267 F.R.D. 361, 364 (D. Kan. 2010).  The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), of which both the United States ad Switzerland are

signatories, is the mechanism by which evidence is gathered abroad through the issuance of a Letter of Request. *See* 23 U.S.T. 255; 28 U.S.C. § 1781 (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner" and reproducing the Hague Convention); *see also In re Urethane*, 267 F.R.D. at 364; Fed. R. Civ. P. 28(b)(1)(A)-(B) ("A deposition may be taken in a foreign country under an applicable treaty or convention [or] under a letter of request.").

Plaintiff argues that the requested discovery would help determine Mr. Badger's connections with and control over the European Entities. Plaintiff contends that there is no means of obtaining this evidence other than seeking it directly from the European Entities and related individuals by a Letter of Request. Plaintiff seeks information regarding whether the Springfield Defendants, Ms. Badger, the SB Trust, and ARDCO Leasing & Investment LLC are, in fact, Mr. Badger's nominees or alter egos and whether Mr. Badger has had the ability to direct transfers of money and stock from the European Entities to entities that he dominates and controls in the United States. The proposed Letter of Request seeks evidence on this subject by asking the Swiss Court to compel production of documents and/or sworn oral testimony from the following: (1) Camille Froidevaux, an officer/director/representative of Miltex; (2) Banque SCS or its successor and a representative with knowledge of the Miltex account at the bank; and (3) Andreas (Andy) Rüegg, who is or was an employee of Banque SCS who administered the Miltex account.

The Springfield Defendants and the Badger Defendants jointly oppose the motion on various grounds, none of which are persuasive or demonstrate good cause. For instance, they speculate that Swiss law will prevent Plaintiff from obtaining the discovery it seeks. However,

the party opposing issuance of a letter of request must demonstrate show good cause or good reason why a letter request should not issue. *See, e.g., B&L Drilling Electronics v. Totco*, 87 F.R.D. 543, 545 (W.D. Okla. 1978) ("[T]here must be some good reason for the Court to deny a party the judicial assistance requested by means of a letter rogatory. Ordinarily on a motion for the issuance of a letter rogatory, the Court will not weigh the evidence that is to be adduced by deposition and will not attempt to predict, whether, in fact, the witnesses will be able to give the testimony which is sought. (citations omitted)). Mere speculation about whether Plaintiff will in fact obtain the desired discovery does not constitute good cause. *See In re Urethane*, 267 F.R.D. at 364 ("Defendants cite no persuasive authority, and the court can find none, for the proposition that a party seeking foreign assistance under the Hague Convention is required to show that the evidence sought will actually be attained.").

The Springfield Defendants and the Badger Defendants also oppose issuance of the Letter of Request on the grounds that it may require additional discovery and postponement of the trial date and should thus not issue. The court notes that this case was recently transferred to Judge Shelby. There are several pending dispositive motions that are scheduled for a hearing in early May before Judge Shelby and, as such, the final pretrial conference and trial originally set for April have been vacated. Because this case has, though no fault of the parties, been somewhat stagnant in its progression, the court concludes that allowing Plaintiff to seek discovery from the European Entities though a Letter of Request is reasonable.

Accordingly, the court concludes that issuance of a Letter of Request is warranted because the information that Plaintiff seeks will help determine whether the Springfield Defendants, Ms. Badger, the SB Trust, and ARDCO Leasing & Investment LLC are, in fact, Mr. Badger's nominees or alter egos. It will also help resolve whether Mr. Badger has had the ability

13

to direct transfers of money and stock from the European Entities to entities that he dominates and controls in the United States. For the reasons stated above and set forth in Plaintiff's supportive memoranda, Plaintiff's motion for the issuance of a Letter of Request is **GRANTED**. Plaintiff shall submit a new proposed Letter of Request with updated information, i.e., dates and judge. Upon receipt of the updated Letter of Request, this court will issue the letter.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

I. The Springfield Defendants' motion for leave to amend their answer to add affirmative defenses[12] is **GRANTED**. Within twenty days of the date of this order, said amended answer must be filed.

II. Plaintiff's motion to strike the affidavit of Ms. Badger[13] is **DENIED**.

III. Plaintiff's motion for the issuance of a Letter of Request[14] is **GRANTED**. Upon receipt of the updated Letter of Request, this court will issue the letter.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2013.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge

---

[12] *See* docket no. 71.

[13] *See* docket no. 86.

[14] *See* docket no. 94.