# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** v. GEORGE BADGER; LAJUANA BADGER; SB TRUST; DAVID BADGER AS TRUSTEE FOR THE SB TRUST; ARDCO LEASING & INVESTMENT LLC; AMERICAN RESOURCES AND DEVELOPMENT COMPANY, INC.; and SPRINGFIELD FINANCE AND MORTGAGE COMPANY, LLC; **Defendants.** | **MEMORANDUM DECISION AND ORDER** Case No. 2:10-cv-935-RJS-PMW **District Judge Robert J. Shelby** **Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Robert J. Shelby pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is the United States of America's ("Plaintiff") Motion to Compel Production of Documents.[2] The court has carefully reviewed the memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

---

[1] *See* Docket nos. 63, 107.

[2] *See* Docket no. 142.

## BACKGROUND

On December 22, 2004, the United States District Court for the District of Utah entered a consent judgment against George Badger ("Defendant") in the case *SEC v. Badger, et al.*, Case No. 2:97-cv-963-CW-BCW. The consent judgment arose from Defendant's fraudulent efforts to boost sales of stock in a golf course development company he operated. The consent judgment orders Defendant to pay disgorgement of over $19 million, and according to Plaintiff, the amount to disgorge is now more than $32 million with the accrual of interest and penalties. In the present action, Plaintiff asserts that "[i]nstead of paying the consent judgment, . . . [Defendant] has used a series of nominees and alter egos to hide his assets and frustrate collection of the consent judgment."[3]

In the summer of 2012, Defendant found four boxes ("boxes") of old documents while cleaning out a closet in his home. The boxes contained documents relating to, *inter alia*, legal services provided by Defendant's prior counsel during lawsuits brought against Defendant by the Securities and Exchange Commission. Defendant delivered the boxes to current counsel, Shawn Turner, who in turn notified counsel for Plaintiff of the existence of the documents. Mr. Turner also informed Plaintiff's counsel that it was Defendant's position that the documents were "protected by the attorney[-]client privilege and/or work[-]product privilege."[4] Plaintiff rejects the argument that *all documents* are protected and now asks the court to require the disclosure of any non-privileged discoverable documents, pursuant to rule 37(a)(3)(A) and (B) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 37(a)(3)(A) and (B).

---

[3] Docket no. 73 at 3.

[4] Docket no. 142, Attachment 1 to Exhibit A.

**ANALYSIS**

Rule 37 of the Federal Rules of Civil Procedure allows a party to make a motion for an order compelling disclosure or discovery. The rule provides that the motion must include certification that the movant has, in good faith, conferred or attempted to confer with the party failing to make the disclosure. *See* FED. R. CIV. P. 37(a)(1). In accordance with rule 37, Plaintiff filed a motion to compel discovery. The court concludes that Plaintiff has met the specifications outlined in rule 37, by attempting to confer with Defendant in good faith through detailed email communication and personal conversations with Defendant's counsel regarding discovery of the documents in the boxes.

I. **Motion to Compel Production of Documents**

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The broad language used in the rule suggests that it is to be liberally construed, thereby allowing discovery of all relevant information, even if that information may not be admissible at trial. *See id.* Although the rules regarding discovery are to be liberally construed, they are not without limits or privileges. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."); *see also* FED. R. CIV. P. 26(b)(3)(A); *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (reasoning that the "'work product of the lawyer'" is not usually discoverable). However, because such privileges contravene the fundamental principles of discovery, the court construes such privileges narrowly and "only to [a] very limited extent." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quotations and citation omitted). Also, both the attorney-client

privilege and the work-product privilege may be waived by the disclosure of a protected communication to a third party. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185-86 (10th Cir. 2006).

In opposition to Plaintiff's Motion to Compel Production of Documents, Defendant raises both the attorney-client privilege and the work-product privilege as defenses to turning over any of the documents contained in the boxes. The court is not persuaded by Defendant's arguments, and will address each in turn.

### A. Attorney-Client Privilege

As noted above, Defendant asserts that the documents found in the boxes are protected by the attorney-client privilege and, therefore, are not discoverable. On the whole, the court is not persuaded by Defendant's arguments. "The purpose behind the attorney-client privilege is to preserve *confidential communications* between attorney and client," *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990), that are "relate[d] to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995). "[D]ocuments which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403-04 (1976). The party asserting the privilege bears the burden of establishing its applicability by addressing specific claims and documents, not by making a blanket claim to privilege. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1183, 1185 (10th

4

Cir. 2010). The attorney-client "'privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing.'" *Munson v. Chamberlain*, 173 P.3d 848, 851 (Utah 2008) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).

While this court has noted that, "communications between non-attorney corporate employees 'for the purpose of obtaining legal advice' will be protected[;] . . . 'the purpose of obtaining legal services must be present'" *from the face of the document. Adams v. Gateway, Inc.*, No. 2:02-CV-106-TS, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003) (quoting *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988)). "For a communication between non-attorney employees to be held privileged, it must be 'apparent that that communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice' or the document itself must 'reflect the requests and directions of counsel.'" *Id.* (quoting *Cuno, Inc.*, 121 F.R.D. at 203).

Although each party failed to address the issue in their memoranda, the court takes notice that pursuant to rule 501 of the Federal Rules of Evidence, Utah law will govern the applicability of the attorney-client privilege. *See, e.g.,* FED. R. EVID. 501; *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 302 (D. Utah 2002) (holding that when state law provides the rule of decision, state law also governs attorney-client privilege). Therefore, rule 504 of the Utah Rules of Evidence will govern the attorney-client privilege in regards to the documents contained in the boxes.

The court concludes that Defendant's blanket assertion that all documents found in the boxes qualify for attorney-client and/or work-product privilege is erroneous. Upon examination

5

of Defendant's "Privilege Log," which is also inadequate, the court notes that many of the documents do not fall within the attorney-client privilege. As such, Defendant must disclose these non-privileged documents according to Plaintiff's discovery requests.

To the extent that Defendant contends that a document is entitled to protection by the attorney-client privilege, Defendant is ordered to utilize a new privilege log to apprise Plaintiff of the contention. The privilege log must contain sufficient detail wherewith other parties, including the court, can assess the claim to a specific document and determine whether each element of the asserted privilege is satisfied. *See* FED. R. CIV. P. 26(b)(5)(A). Typically a privilege log is adequate if it identifies with particularity the documents withheld. The privilege log should include the date of the documents creation, the author (and, if known, the authors relation to the matter at hand), the addressee and all recipients, and a description of the document detailing the factual basis for the assertion of the privilege or immunity. Also, the particular privilege relied upon for each document must be specified. *See Zander v. Craig Hosp.*, 743 F. Supp. 2d 1225, 1231-32 (D. Colo. 2010). Upon examination of the new privilege log, assuming one will be made, Plaintiff may choose to bring a motion to compel any specific document(s) they contend should not be protected.

### B. Work-Product Privilege

Defendant also asserts that the documents found in the boxes are protected by the work-product privilege and, therefore, are not discoverable. The court is generally not persuaded by this argument either. The work-product privilege protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A). The purpose of the work-product privilege is to protect "attorneys'

or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006). "Work product includes '[s]ubject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence.'" *Adams*, 2003 WL 23787856, at *5 (quoting *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990)) (alteration in original).

To be protected as work product, a document "must reflect the thinking of the attorney by being an expression from her, or, if a communication to her, it must reflect back her inquiry." *Phillip M. Adams & Assocs., LLC v. Winbond*, No. 1:05-CV-64 TS, 2010 WL 2991065, at *3 (D. Utah July 27, 2010). Like the attorney-client privilege, the work-product privilege is not absolute and may be waived. *See United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008). Unlike the attorney-client privilege, the work-product doctrine is governed by federal law. *See Lifewise*, 206 F.R.D. at 302.

Again, the court has reviewed the "Privilege Log" submitted by Defendant's counsel and concludes that many of the documents do not qualify for the work-product privilege. A document does not become the attorney's work product just because it has been identified, collected, and compiled by the attorney, especially when the document is not "privileged communication" and would otherwise be discoverable. This type of collection activity by an attorney does not reflect the sort of "mental impressions, conclusions, opinions, or legal theories" identified by rule 26(b)(3). FED. R. CIV. P. 26(b)(3)(B). As such, the court concludes that the blanket assertion of work-product privilege to all the documents in the boxes is erroneous.

To the extent that Defendant's counsel contends that a document from the boxes is covered by the work-product privilege, it is ordered that the document will be identified on the new privilege log as outlined in Section A above. Otherwise, Defendant will turn over all non-privileged documents according to Plaintiff's discovery requests.

In addition, the court recognizes that there is a dispute as to how many documents the Plaintiff is seeking.[5] The court disagrees with Defendant that Plaintiff is seeking only "'correspondence with Militex and/or Camille Froidevaux" together with any "correspondence with Andreas Ruegg or Banques SCS."[6] Or, that only seven documents fit the description for what Plaintiff seeks.[7] The court concludes that Plaintiff seeks discovery of *all* non-privileged documents, and that privileged documents must be identified in a privilege log.

In summary, pursuant to rule 26(e)(1) of the Federal Rules of Civil Procedure, the court orders Defendant to supplement his prior disclosures.

## **CONCLUSION**

1. Plaintiff's Motion to Compel Production of Documents[8] is **GRANTED**. Defendant is hereby ordered to produce any non-privileged documents from the boxes to Plaintiff on or before August 16, 2013.

---

[5] *See* docket nos. 142, 143, and 145.

[6] *See* docket no. 143.

[7] *See id*.

[8] *See* docket no. 142.

2. On or before August 16, 2013, Defendant is to make a new privilege log, as outlined in Section A above, identifying all privileged documents not turned over to Plaintiff.

**IT IS SO ORDERED.**

DATED this 30th day of July, 2013.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge